IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BOARD OF DIRECTORS OF THE RAFFAELLO CONDOMINIUM ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | Index No. |
| v. | ) ) ) | |
| 201 EAST DELAWARE, LLC; RAFFAELLO MANAGEMENT, LLC and RAFFAELLO HOTEL OPERATIONS, LLC, | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, BOARD OF DIRECTORS OF THE RAFFAELLO CONDOMINIUM ASSOCIATION, by its attorneys, David J. Bloomberg and Adam K. Beattie of Chuhak & Tecson, P.C., for its Complaint against 201 EAST DELAWARE, LLC, RAFFAELLO MANAGEMENT, LLC and RAFFAELLO HOTEL OPERATIONS, LLC, states as follows:

1. This case concerns the operation and administration of the Raffaello Hotel, established as a condominium association under the Illinois Condominium Property Act, 765 ILCS 605/1, *et seq*. (the "Condo Act").

## JURISDICTION AND VENUE

2. This action states claims under the Sherman Antitrust Act, 15 U.S.C. § 1-2, 14 *et seq*., as well as common law claims brought under the laws of the State of Illinois. Jurisdiction is appropriate pursuant to 15 U.S.C. § 15 and 28 U.S.C. § 1331 and 1367(a). Alternatively, this Court has jurisdiction under 28 U.S.C. § 1332.

3.     This Court has jurisdiction over this case under 28 U.S.C. §1331.  Counts I and II of this Complaint state claims against Defendants arising under the Sherman Antitrust Act, 15 U.S.C. §1-2, 14 *et seq*.

4.     This Court has jurisdiction over Plaintiff's state and common law claims stated in Counts III-VII under 28 U.S.C. § 1367(a) as those claims are so related to Plaintiff's claims falling under the Court's original jurisdiction that they form part of the same case or controversy, arising as they do from a common nucleus of operative facts and law.

5.     Alternatively, this Court has jurisdiction over this entire controversy under 28 U.S.C. § 1332.  Plaintiff, an Illinois not-for-profit corporation, is in complete diversity with each of the three Defendants, which are limited liability companies formed under the laws of the state of Delaware with their members, upon information and belief, having citizenship in Florida.  The amount in controversy significantly exceeds $100,000.00.

6.     Venue is proper in this judicial forum as the facts giving rise to the controversy occurred in the Northern District of Illinois, and the subject property is located within Cook County, Illinois.

7.     Plaintiff is the Board of Directors for the Raffaello Condominium Association ("Association").  Plaintiff is an Illinois not-for-profit corporation formed as a Condominium Association under the Illinois Condominium Property Act, and is responsible for the maintenance and administration of the "common elements" of the property known as the Raffaello Hotel located at 201 E. Deleware Place in Chicago, Illinois, as set forth in the Association's Declaration of Condominium Ownership and Easements, Restrictions, Covenants, and By-Laws.  Plaintiff has standing to bring this action in its representative capacity under 765 ILCS 605/9.1(b), as the claims stated herein relate the common elements of the Association and effect more than one unit.

- 2 -

8.     Defendant 201 East Delaware, LLC is a Delaware Limited Liability Company with its principal place of business located at 2200 Biscayne Blvd. in Miami, Florida, and at all times relevant to this Complaint has served as the Developer of the Association as that term is defined in the Association's Declaration of Condominium Ownership and Easements, Restrictions, Covenants, and By-Laws.  201 East Delaware, LLC has as its sole member an entity called 201 East Delaware Holdings, LLC, a separate Delaware Limited Liability Company with its principal place of business located at 2200 Biscayne Blvd. in Miami, Florida.  201 East Delaware Holdings, LLC has as its sole member an entity called CH Region 1 Holdings LLC, a Florida LLC with its principal place of business located at 2200 Biscayne Blvd. in Miami, Florida.  CH Region 1 Holdings LLC has as its sole manager an entity called CH Property Holdings LLC a/k/a Crescent Heights Property Holdings LLC, a Florida LLC with its principal place of business located at 2200 Biscayne Blvd. in Miami, Florida.  Crescent Heights Property Holdings, LLC has among its managers Sonny Kahn, Russell Galbut, and Bruce Menin, all residents of the state of Florida with their principal place of business at 2200 Biscayne Blvd, in Miami, Florida.

9.     Defendant Raffaello Hotel Management, LLC is Delaware Limited Liability Company with its principal place of business located at 2930 Biscayne Blvd. in Miami, Florida, and at all times relevant to this Complaint has served as the Hotel Manager, as that term is defined in the Association's Declaration of Condominium Ownership and Easements, Restrictions, Covenants, and By-Laws.  Raffaello Hotel Management, LLC has as its sole member an entity called 201 East Delaware Holdings, LLC, a Delaware Limited Liability Company with its principal place of business located at 2200 Biscayne Blvd. in Miami, Florida. 201 East Delaware Holdings, LLC has as its sole member an entity called CH Region 1 Holdings LLC, a Florida LLC with its principal place of business located at 2200 Biscayne Blvd. in Miami, Florida.  CH Region 1 Holdings LLC has as its sole manager an entity called CH

- 3 -

Property Holdings LLC a/k/a Crescent Heights Property Holdings LLC, a Florida LLC with its principal place of business located at 2200 Biscayne Blvd. in Miami, Florida. Crescent Heights Property Holdings, LLC has among its managers Sonny Kahn, Russell Galbut, and Bruce Menin, all residents of the state of Florida with their principal place of business at 2200 Biscayne Blvd, in Miami, Florida.

10. Defendant Raffaello Hotel Operations, LLC is Delaware Limited Liability Company with its principal place of business located at 2200 Biscayne Blvd. in Miami, Florida, and at all times relevant to this Complaint has served as the Shared Facility Owner within the Association, as that term is defined in the Association's Declaration of Condominium Ownership and Easements, Restrictions, Covenants, and By-Laws. Raffaello Hotel Operations, LLC has among its members KGM Chicago LLC, an unregistered entity with a principal place of business located at 2200 Biscayne Blvd. in Miami, Florida. Upon information and belief, "KGM" stands for "Kahn Galbut Menin," the managers of Crescent Heights Property Holdings, LLC.

## ALLEGATIONS COMMON TO ALL CLAIMS

11. The Association is governed by a Declaration of Condominium Ownership and Easements, Restrictions, Covenants, and By-Laws recorded in the Cook County Recorder's office on June 26, 2006, attached hereto as Exhibit A (the "Declaration").

12. As marketed to prospective purchasers of Units in the Association, the hotel condominium vehicle was designed to allow the Unit Owners of various Units within the Association to use the Units at their discretion and/or to allow the Units to be rented out for term use by guests. At the time, there were no other similar options in the Chicagoland area for the opportunity to purchase hotel condominium Units at the prices being offered.

13. Although expressly established via the Declaration as a Condominium pursuant to the Act, the developer of the Association, Defendant 201 East Delaware, LLC ("Developer") was

- 4 -

careful to structure the Declaration so as to never actually turn over control over "common elements" within the Association's building (as that term is established in Section 2(e) of the Condo Act) to the Association's Board.

14.     Rather, the Developer specifically sidestepped key provisions of the Condo Act in order for it and/or its affiliates, Defendants Raffaello Management, LLC ("Hotel Manager") and Raffaello Hotel Operations, LLC ("RHO") to retain total control over all of the meaningful aspects of the Association Building's common elements (i.e., the hallways, lobby, stairways, entrances, elevators, and exits) rather than turning over control of these common elements to the Association's Board as required by the Condo Act.

15.     Defendants accomplished and continue to assert this control, through 1) a Declaration that blatantly violates the Condo Act; and 2) a maze of interlocking tying arrangements in which the Defendants force Unit Owners within the Association to sign onerous, presumptively permanent service contracts with entities closely related to the Developer -- the Hotel Manager and RHO. The Defendants required and continues to require the Unit Owners to enter into these contracts as a condition to both purchase and own Units and to receive rental income for their Units.

16.     Defendants have complete discretion over expenses relating to the Association and require Unit Owners to pay Defendants for virtually all expenses associated with the hotel, including expenses relating to common elements. The Declaration and tying agreements leave little ability for the Unit Owners and the Association (which the Condo Act requires to have complete control over the Association's common elements) to control the space they own and/or in which they live.

17.     Beyond the lack of control that should be in the hands of Plaintiff, the Defendants have imposed improper, onerous charges upon the members of the Association and the

- 5 -

Association itself with no recourse to negotiate or even discover the basis of such charges absent legal action.

18.     Defendants, indirectly through the Declaration and directly through their actions, have forced the Unit Owners of the Association to continue to utilize the Developer and its closely related entities to provide all services incident to the hotel aspect of the condominium, with threats of financial and legal liability if they don't comply.

19.     Although this arrangement has proven lucrative and beneficial to the Defendants, it patently violates the Sherman Act and the Condo Act in numerous respects.  The various arrangements by which the Unit Owners of the Association are beholden to the Developer, the Hotel Manager, and RHO (via various tying arrangements and forced expenditures) are unconscionable both on their face and in the manner in which Defendants apply them.

20.     Through this action, Defendants seek to have the Association run properly pursuant to the Act.  Since the Declaration cannot conflict with the Condo Act, Plaintiff seeks the Court's intervention to hold various portions of the Declaration void under the Condo Act.

21.     In addition, the anti-competitive structure established by the Declaration and the maze of contractual obligations described below should be addressed by the damage and injunctive remedies afforded by the Sherman Act.

22.     While the Association receives invoices that provide very limited information about the costs and revenue associated with the Association, the full amount and nature such funds cannot be fully ascertained without an accounting by Defendants, who have intentionally covered up and prevented the Association from learning about the costs and revenue that they receive from the operation of the hotel operations within the Association.

**Facts Common to Plaintiff's Claims under the Sherman Act for Defendants' Illegal Tying Arrangements - Counts I and II**

*The Declaration Requires the Signing of a Maintenance Agreement with the Hotel Manager*

23.     Since approximately 2005, the Developer has sold Units within the Association.

24.     As part of the requirements of purchasing a Unit within the Association, the Developer in the Declaration requires that "each Unit Owner of a Hotel Unit must enter into [a Hotel Unit Maintenance Agreement] with the SFU Owner and the Hotel Management Company (and to which each Unit Owner of a Hotel Unit must remain a party for so long as such Unit Owner Owns a Hotel Unit in the Condominium), in the then-current form promulgated from time to time by the Hotel Management Company and agreed upon by the SFU Owner."  *See* Declaration, Article I (defining "Hotel Unit Maintenance Agreement").

25.     Section 7.1 of the Declaration sets forth that all Unit Owners of the Hotel "will be required to enter into a Hotel Unit Maintenance Agreement with the Developer (or any successor SFU Owner) and the Hotel Management Company . . .and each Unit Owner of a Hotel Unit will be required to be a party to such Hotel Unit Maintenance Agreement for so long as such Unit Owner owns a Hotel Unit in the Condominium."

26.     Beyond the requirement of entering into the Maintenance Agreement with a specified party connected with the Developer as part of a purchase of Unit, the Declaration requires, as a condition of the Unit purchase, that "[n]o Unit Owner of a Hotel Unit shall have the right to opt out of entering into the Hotel Unit Maintenance Agreement, receiving the services to be provided pursuant to the Hotel Unit Maintenance Agreement . . . or paying any of the fees, costs or charges [imposed based on the Hotel Unit Maintenace Agreement]."

27.     The Hotel Unit Maintenance Agreement ("Maintenance Agreement") continues to be a mandatory agreement to be signed by all Unit Owners of the Association upon their purchase

2588988.9.24866.56501

of Units as per Section 7.1 of the Declaration. A copy of the form of the Maintenance Agreement is attached hereto as Exhibit B.

28. The Maintenance Agreement permanently grants to the Defendant "Hotel Manager" (Raffaello Management, LLC) the right to manage the hotel. The Hotel Manager was engaged by the Developer and/or RHO. As set forth above, the Hotel Manager, the Developer and RHO are all related entities. The Developer is expressly made a "third party beneficiary" to the Maintenance Agreement.

29. The Maintenance Agreement cannot be terminated by Unit Owners at any time. The only way the Agreement can be terminated is if the Developer terminates the relationship with the Hotel Manager. Given that the Developer and Hotel Manager are related entities controlled by the same entities, such termination rights are illusory.

30. The Association and the Unit Owners are prohibited from selecting or changing the Hotel Manager.

31. The Maintenance Agreement has no expiration date by its terms, and the Hotel Manager is provided authority to, among other things, "establishing rental rates for guest rooms in the Hotel, collecting rents and other charges from Hotel Guests, imposing fees or charges upon the Unit and Owner (including without limitation, collecting and administering all fees, charges, assessments, reserves and other amounts contemplated under the Developer Documents.[)]" *See* Hotel Maintenance Agreement, Paragraph 8.

32. The Hotel Maintenance Agreement provides the Hotel Manager unlimited discretion to upgrade the interior of the Units "in a manner suitable for luxury hotel accommodations." Maintenance Agreement, paragraph 5.

33. The authority granted to the Hotel Manager in the Maintenance Agreement relative to the Units is further solidified and tied in through Section 4.5 of the Declaration, which provides

- 8 -

that Unit Owners may not alter any of the decorative elements of their Units, also known as "FF&E." Rather, Defendants are given unlimited and unchecked discretion to change the FF&E and to charge the costs of such change directly to the Unit Owners. Any determination by the Defendants, as per Section 4.5(b)(i) of the Declaration, is considered "conclusive and binding" upon all Unit Owners.

### The Maintenance Agreement and the Declaration Tied to Signing of the Rental Agreement

34. As a "hotel condominium," the main incentive for Unit Owners in purchasing and owning a unit within the Association is the Unit Owner's opportunity to participate in the rental program for the Raffaello Hotel, also called a rental pool. By being a part of a rental program, Unit Owners can collect rental income by virtue of the periodic rental of their Units for hotel purposes.

35. Based on the exclusive authority granted to the Hotel Manager/Developer in the Declaration and Hotel Unit Maintenance Agreement, Unit Owners of the Association entered into a "Raffaello Hotel Condominium Rental Program Agreement" ("Rental Agreement") with RHO. A version of the Rental Agreement from 2007 is attached hereto as Exhibit C.

36. Defendants have represented that signing the Rental Agreement is the only way for Unit Owners to receive rental income.

37. All Unit Owners, as a condition to buying Units, were left with no effective choice but to enter into the Rental Agreement in order to be entered into the rental pool from which they can receive rental income for their Units.

38. Although the Rental Agreement speaks in terms of participation in the rental program being "optional," the language in the Declaration and the Hotel Unit Maintenance Agreement make clear that to the extent any Unit Owner wishes to use his or her Unit for rental purposes, the only authorized way to do so is by singing the Rental Agreement with RHO.

- 9 -

39. The Rental Agreement sets forth the economic split by which RHO, which has the sole authority to rent the Units, takes a share of the rental income paid by guests of the Unit Owners within the Association. The agency granted by Unit Owners to RHO under the Rental Agreement included the "exclusive authority [for RHO] to rent, operate, manage and administer, the Subject Guest Room."

40. As set forth above, the Developer included in the Declaration the requirement that all Unit Owners must enter into the Maintenance Agreement (for which Unit Owners cannot opt out). *See* Declaration, Section 7.1. Under the Maintenance Agreement, Unit Owners are required to receive services from the Hotel Manager, including "establishing rental rates for guest rooms in the Hotel, collecting rents and other charges from Hotel Guests, imposing fees or charges upon the Unit and Owner (including without limitation, collecting and administering all fees, charges, assessments, reserves and other amounts contemplated under the Developer Documents.[)]" *See* Maintenance Agreement, Section 8.

41. By permanently reserving to themselves the ability to set the rental rates and collect the rent from Hotel Guests under Section 8 of the Maintenance Agreement, among other things, the Defendants have effectively reserved to themselves the sole ability to receive income under the Rental Agreement. There are no checks by which the Unit Owners or the Association can alter this authority under the Maintenance Agreement and (consequently) the Rental Agreement.

42. Indeed, the Rental Agreement originally signed by Unit Owners permits RHO to "exclusively rent, operate, manage, and administer" the Unit for hotel purposes. By reserving broad rights to the Hotel Manager in the Maintenance Agreement to establish and collect the rents on the one hand, and the overlapping right to RHO to "rent" and "administer" the Units for the rental program on the other hand, the Defendants are effectively forcing Unit Owners to

choose Defendants as the only parties with whom Unit Owners can deal with for the rental of their Units.

43.    The terms of the Rental Agreement are financially onerous and unconscionable in favor of RHO.

44.    Of the rental income received from hotel guests, RHO extracts an unspecified dollar amount for a "travel agency commission."  Upon information and belief, even where bookings are not made through an agency, the "commission" is taken by RHO in amounts as high as 10% of the rental amount.  After all "commissions" are paid, RHO pays itself 55% of the rental income received for each Unit.

45.    This split, in which RHO takes a lion's share of the income from the rental of the unit, is unconscionably high in favor of RHO.  The current prevailing market rate for similar services has been quoted as a split in which Unit Owners would receive 65% of all Rental Income.

46.    The split is even more unconscionable for the Unit Owners considering all of the costs required to be paid to RHO for the Shared Facilities Expenses (detailed above), which subsidizes RHO's assessments, taxes, and all operating costs for the SFU (which in reality are Common Elements of the Association), all of which are imposed at the sole and "conclusive" discretion of Defendants.

47.    Upon information and belief, RHO has further hid Rental Income from one or more Unit Owners by renting out Units and failing to report the income attributable to the rental to such Unit Owner.

48.    Upon information and belief, RHO in concert with the other Defendants, has manipulated the Shared Facilities Expenses so as to double dip on funds received under the Rental Agreement.

49. The "tied" nature of the obligation of the SFU Expense under the Declaration along with the rental split in favor of RHO under the Rental Agreement permits Defendants to promulgate this scheme upon Plaintiff and the Unit Owners.

50. RHO and the other Defendants have purposefully concealed these amount of rental income received under the various Rental Agreements in order to extract extra SFU charges from the Association. This is not permitted under the Declaration, which requires in Section 6.10(a), among other things, for RHO to disclose all income received from its operation of the SFU/hotel.

51. The rental pool "split" articulated in the Rental Agreement is grossly unfair in comparison to other hotel condominium properties throughout the country.

52. In August 2012, the Association, on behalf of 159 Unit Owners, cancelled the initial form of the Rental Agreement with RHO and has since sought to negotiate a different agreement related to certain inequities inherent in the Rental Pool.

53. Although the Association has attempted to speak with Defendants about entering into alternate arrangements, Defendants have refused to provide any alternate arrangements for the rental pool. The choice for the Association Unit Owners has been to continue with RHO's onerous rental split or be barred from the rental program.

54. Despite repeated requests from the Association, the Defendants have refused to negotiate with the Association in good faith regarding the terms of the Rental Agreement, and as a result of Section 13.7 of the Declaration (which prohibits any amendment of the Declaration that affects Developer without its express consent), Plaintiff is unable to amend the terms of the Declaration and (as a result) the obligations relating to Unit Owners' permanent obligations in the tied-in Maintenance Agreement.

55. Defendants have further threatened to remove Unit Owners from the rental program if they do not consent to signing a new version of the Rental Agreement (drafted in 2014) that

would lock Unit Owners in to another oppressive Rental Agreement for a *seven year* term that cannot be cancelled, among other onerous and unconscionable terms. (See proposed Rental Agreement, attached hereto as Exhibit D).

56.   The Association has been set up to provide a permanent financial windfall to Defendants: the Declaration forces Unit Owners, as a condition to ownership of Units, to sign a Maintenance Agreement with a second entity which is closely related to the Developer, the Hotel Manager.

57.   The Maintenance Agreement requires Unit Owners to receive services from the Hotel Manager as long as the Unit Owner lives in the Unit. If the Unit Owner wishes to enter into any rental agreement, the terms of the Declaration and the Hotel Unit Maintenance Agreement leave Unit Owners no effective choice but to sign a Rental Agreement with a *third* entity related to the Developer, RHO.

58.   Plaintiff has been damaged by virtue of the tying arrangement, as the onerous financial terms have not allowed Unit Owners to realize the income that they could otherwise obtain for the services outlined in the Maintenance and Rental Agreements. Moreover, the value of the Units within the Association has been severely diminished by virtue of Defendants' actions.

59.   The vast majority of the Unit Owners within the Association purchased Units based on the profits and incentives provided by participation in the rental pool. The current threatened removal of Units from the rental pool if they do not sign an unconscionable agreement with RHO would certainly be adverse to the interests of a vast majority of the Association's members because the Declaration and Maintenance Contract effectively prohibit the establishment of a competing rental pool, as well as any mechanism that would permit Unit Owners to rent their Units directly to the public.

## COUNT I – TYING UNIT PURCHASE TO HOTEL MANAGEMENT SERVICES— Sherman Act 15 U.S.C. § 1

60. Plaintiff realleges and incorporates by reference paragraphs 1 through 59 as if set forth herein.

61. Developer is the seller of all of the Units within the Association.

62. When selling Units within the Association, Developer included provisions in the Declaration that required Unit Owners to sign the Management Agreement as a condition to purchase of the Units.

63. The Declaration and Maintenance Agreement include requirements that Unit Owners purchase and receive various services from the Hotel Manager.

64. A Unit is defined for purpose of this Count as a residential property located within the Association.

65. Hotel Maintenance Services are defined for the purposes of this Count as maintenance, housekeeping, front desk services, establishment rental rates for guest rooms in the Hotel, collecting rents and other charges from Hotel Guests, and imposing fees or charges upon the Unit and Owner.

66. A Unit and Hotel Maintenance Services are distinct products commonly provided separately by distinct suppliers.

67. Units, whether sold directly by the Developer or resold subject to the Declaration, are all of the Units contained within the Association (other than the SFU).

68. The Declaration mandates the purchase of the services set forth in the Maintenance Agreement.

69. Defendants have usurped the role normally filled by a condominium association of providing for and/or negotiating for the services set forth in the Maintenance Agreement.

70.    By usurping the role normally filled by a condominium association of providing for and/or negotiating for the services set forth in the Maintenance Agreement, Defendants have coerced Unit Owners to purchase Hotel Maintenance Services from the Hotel Manager.

71.    By continuing to usurp the role normally filled by a condominium association of providing for and/or negotiating for the services set forth in the Maintenance Agreement, Defendants threaten to coerce future homeowners to purchase Hotel Maintenance Services.

72.    By structuring the Declaration in the manner set out above, Defendants threaten to coerce future homeowners to purchase Hotel Maintenance Services from its closely related entity the Hotel Manager.

73.    Defendants, closely related entities, have substantial economic power in the market for hotel condominium properties in Chicago.

*Past and Present Anticompetitive Effects*

74.    By requiring Unit Owners to purchase Hotel Maintenance Services from the Hotel Manager in order to acquire a Unit, Declarant and its closely related entity, the Hotel Manager, have foreclosed competition for Hotel Maintenance Services.

75.    By requiring Unit Owners to purchase Hotel Maintenance Services from the Hotel Manager in order to acquire a Unit, Declarant and its closely related entity, the Hotel Manager, have obtained a price for Hotel Maintenance Services higher than they could obtain in a competitive market.

76.    By requiring Unit Owners to purchase Hotel Maintenance Services from the Hotel Manager in order to acquire a Unit, Declarant and its closely related entity, the Hotel Manager, have provided Hotel Maintenance Services of a lesser quality than Unit Owners could otherwise obtain in a competitive market.

77.   The Association has located at least one provider of Hotel Maintenance Services willing to provide such services at a lower cost than the Hotel Manager has provided if given an opportunity to compete with the Hotel Manager.

*Prospective Anticompetitive Effects*

78.   By requiring Unit Owners to purchase Hotel Maintenance Services from the Hotel Manager in order to purchase a Unit, Declarant and its closely related entity, the Hotel Manager, threaten to foreclose competition for Hotel Maintenance Services.

79.   By requiring Unit Owners to purchase Hotel Maintenance Services from the Hotel Manager in order to purchase a Unit, Declarant and its closely related entity, the Hotel Manager, threaten to obtain a price for Hotel Maintenance Services higher than it could otherwise obtain in a competitive market.

80.   By requiring Unit Owners to purchase Hotel Maintenance Services from the Hotel Manager in order to purchase a Unit, Declarant and its closely related entity, the Hotel Manager, threaten to deliver Hotel Maintenance Services of lesser quality than homeowners could otherwise obtain in a competitive market.

81.   The Association has located at least one provider of Hotel Maintenance Services willing to provide such services at a lower cost than the Hotel Manager has provided if given an opportunity to compete with the Hotel Manager.

*Substantial Interstate Commerce in the Tied Market*

82.   Many Unit Owners and the Defendants are domiciled outside the state of Illinois.

83.   Unit Owners domiciled outside of the State of Illinois who contract for Hotel Maintenance Services from outside this state engage in interstate commerce.

84.   A substantial volume of interstate commerce is involved in the market for Hotel Maintenance Services.

- 16 -

85.    Declarant, and its related entity, the Hotel Manager have tied and threaten to continue to tie the purchase of Units in the Association to the purchase of Hotel Maintenance Services in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

86.    As a direct and proximate result of the foregoing, Plaintiff has sustained damages and is threatened with irreparable harm.

WHEREFORE, Plaintiff respectfully requests the Honorable Court to:

a.    Enter judgment that Defendants have violated 15 U.S.C. § 1 as alleged herein;

b.    Enjoin Defendants, pursuant to 15 U.S.C. § 26 from violating 15 U.S.C. § 1in the future;

c.    Declare, pursuant to 15 U.S.C. § 2201, provisions of the Declaration, Management Agreement and/or Rental Agreement that violate 15 U.S.C. § 1 or that are otherwise unlawful, are void and unenforceable;

d.    Award damages, pursuant to 15 U.S.C. § 26, sufficient to fairly compensate Plaintiff for its injuries sustained as a result of Defendants' violation of 15 U.S.C. § 1, not less than $100,000.00;

e.    Award Plaintiff punitive damages, pursuant to 15 U.S.C. § 26, in amount equal to three times the amount of such damage;

f.    Award Plaintiff its reasonable attorneys' fees and costs and disbursements of this action, to be paid by Defendants; and

g.    Grant such other relief as may be just and proper.

**COUNT II – TYING RENTAL AGREEMENT TO UNIT PURCHASE AND MAINTENANCE AGREEEMENT—Sherman Act 15 U.S.C. § 1**

87.    Plaintiff realleges and incorporates by reference paragraphs 1 through 86 as if set forth herein.

88.    Developer is the seller of all of the Units within the Association.

- 17 -

89.     When selling Units within the Association, Developer included provisions in the Declaration that required Unit Owners to sign the Management Agreement as a condition to purchase of the Units.

90.     The Developer further knew that the main incentive for Unit Owners in purchasing and owning a unit within the Association was the Unit Owners' opportunity to participate in the rental program for the Raffaello Hotel.  By being a part of a rental program, Unit Owners can collect rental income by virtue of the periodic rental of their Units for hotel purposes.

91.     Based on the exclusive authority granted to the Developer and Hotel Manager in the Declaration and Hotel Unit Maintenance Agreement, as well as representations made by Defendants, Unit Owners were left with no choice but to sign the Rental Agreement with RHO as the only way possible to receive rental income.

92.     The Maintenance Agreement provides the Hotel Manager with the sole authority of "establishing rental rates for guest rooms in the Hotel, collecting rents and other charges from Hotel Guests, imposing fees or charges upon the Unit and Owner (including without limitation, collecting and administering all fees, charges, assessments, reserves and other amounts contemplated under the Developer Documents.[)]" *See* Maintenance Agreement, Section 8.

93.     The Rental Agreement originally signed by Unit Owners permits RHO to "exclusively rent, operate, manage, and administer" Units for hotel purposes.  By reserving broad rights to the Hotel Manager in the Maintenance Agreement to establish and collect the rents on the one hand, and the overlapping right to RHO to "rent" and administer the Units for the rental program on the other hand, the Defendants are effectively forcing Unit Owners to choose Defendants as the only parties with whom Unit Owners can deal with and negotiate with for the rental of their Units.

- 18 -

94.     The only practical option for a Unit Owner desiring rental income is therefore to sign the Rental Agreement and purchase rental services from RHO.

95.     In the purchase of a Unit (and the required signing of the Maintenance Agreement), and in consideration of a desire to rent a Unit, a Unit Owner is therefore required to purchase rental services from RHO or else agree not to rent their unit.

96.     Unless enjoined from doing so, RHO will continue to require all Unit Owners to sign a Rental Agreement with RHO that prohibits Unit Owners from using the Unit as a source of rental income except by signing the Rental Agreement and purchasing rental services from RHO.

97.     The only option for a Unit Owner or future purchaser of a Unit desiring rental income is therefore to sign the Rental Agreement and purchase rental services from RHO.

98.     The Declaration and the Maintenance Agreement effectively forecloses the possibility of the provision of the services set forth in the Rental Agreement to Unit Owners by anyone other than RHO.

99.     By the terms of the Declaration and Maintenance Agreement and the conduct of Defendants, Unit Owners have been given the choice of either entering into the Rental Agreement with RHO or not being included in the rental pool.

100.    The Declaration, Management Agreement and the Rental Agreement include requirements that Unit Owners purchase and receive various services from the Hotel Manager and RHO, entities closely related to the Developer.

101.    A Unit is defined for purpose of this Claim as a residential property located within the Association.

102.    Hotel Maintenance Services are defined for the purposes of this Claim as maintenance, housekeeping, front desk services, establishment rental rates for guest rooms in the

Hotel, collecting rents and other charges from Hotel Guests, and imposing fees or charges upon the Unit and Owner.

103. Rental Services are defined for purposes of this Claim as handling reservations, renting, operating, managing, and otherwise administering the Unit for hotel purposes as well as administering the split of rental income for the benefit of the Unit Owner.

104. A Unit, Hotel Maintenance Services, and Rental Services are distinct products commonly provided separately by distinct suppliers.

105. Units, whether sold directly by the Developer or resold subject to the Declaration, are all of the Units contained within the Association except for the SFU.

106. The Rental Agreement provides for the purchase of the Rental Services from RHO as set forth therein.

107. By structuring the Declaration and the Maintenance Agreement as set out above, Defendants have coerced Unit Owners to either purchase Rental Services from RHO or not receive rental income.

108. By structuring the Declaration and the Maintenance Agreement as set out above, Defendants threaten to coerce Unit Owners to either purchase Rental Services from RHO or not receive rental income.

109. Defendants, closely related entities, have substantial economic power in the market for hotel condominium properties in Chicago.

### Past and Present Anticompetitive Effects

110. By requiring Unit Owners to purchase Rental Services from RHO in order to acquire a Unit and/or receive Hotel Maintenance Services, Defendants, have foreclosed competition for Rental Services.

2588988.9.24866.56501

111. By requiring Unit Owners to purchase Rental Services from RHO in order to acquire a Unit and/or receive Hotel Maintenance Services, Defendants have obtained a price for Rental Services higher than they could obtain in a competitive market.

112. By requiring Unit Owners to purchase Rental Services from RHO in order to acquire a Unit or receive Hotel Maintenance Services, Defendants have provided Rental Services of a lesser quality than Unit Owners could otherwise obtain in a competitive market. The Association has located at least one provider of Rental Services willing to provide such services at a lower cost than RHO has provided if given an opportunity to compete with the Hotel Manager.

*Prospective Anticompetitive Effects*

113. By requiring Unit Owners to purchase Rental Services from RHO in order to acquire a Unit or receive Hotel Maintenance Services, Defendants threaten to foreclose competition for Rental Services.

114. By requiring Unit Owners to purchase Rental Services from RHO in order to acquire a Unit or receive Hotel Maintenance Services, Defendants threaten to obtain a price for Rental Services higher than they could otherwise obtain in a competitive market.

115. By requiring Unit Owners to purchase Rental Services from RHO in order to acquire a Unit or receive Hotel Maintenance Services, Defendants threaten to deliver Rental Services of lesser quality than homeowners could otherwise obtain in a competitive market.

116. The Association has located at least one provider of Rental Services willing to provide such services at a lower cost than RHO has provided if given an opportunity to compete with RHO.

*Substantial Interstate Commerce in the Tied Market*

117. Many Unit Owners and the Defendants (who are closely related entities) are domiciled outside the state of Illinois.

118. Unit Owners domiciled outside of the state of Illinois who contract for Rental Services from outside this state engage in interstate commerce.

119. A substantial volume of interstate commerce is involved in the market for Rental Services.

120. Defendants, closely related entities, have tied and threaten to continue to tie the purchase of Units in the Association and receipt of Hotel Maintenance Services to the purchase of Rental Services in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

121. As a direct and proximate result of the foregoing, Plaintiff has sustained damages and is threatened with irreparable harm.

WHEREFORE, Plaintiff respectfully requests the Honorable Court to:

 a. Enter judgment that Defendants have violated 15 U.S.C. § 1 as alleged herein;

 b. Enjoin Defendants, pursuant to 15 U.S.C. § 26 from violating 15 U.S.C. § 1in the future;

 c. Declare, pursuant to 15 U.S.C. § 2201, provisions of the Declaration, Management Agreement, and/or Rental Agreement that violate 15 U.S.C. § 1 or that are otherwise unlawful, are void and unenforceable;

 d. Award damages, pursuant to 15 U.S.C. § 26, sufficient to fairly compensate Plaintiff for its injuries sustained as a result of Defendants' violation of 15 U.S.C. § 1, not less than $100,000.00;

 e. Award Plaintiff punitive damages, pursuant to 15 U.S.C. § 26, in amount equal to three times the amount of such damage;

 f. Award Plaintiff its reasonable attorneys' fees and costs and disbursements of this action, to be paid by Defendants; and

 g. Grant such other relief as may be just and proper.

**Facts Common to Counts III - VII**

***The Declaration's Wrongful Definition and Treatment of Common Elements and Charges for the "Shared Facilities Unit"***

122.     The Condo Act establishes a system whereby control and administration of the common areas, must left to the Board of Directors for the Association.  *See* Act, Section 18.4(a).

123.     However, the Declaration for the Association establishes the opposite:  control of the majority of the common areas is left to a *Unit Owner*, Defendant RHO, an entity closely related to the Developer.

124.     The Developer accomplishes this artifice in the Declaration by allocating most of the areas of the condominium that are actually common elements to something called a "Shared Facilities Unit" to be owned by a "Shared Facilities Owner."  The "Shared Facilities Owner" is RHO.

125.     Section 4.1(b) of the Condo Act sets forth that where there exists a conflict between the terms of a condominium association's declaration and the terms set forth in the Condo Act, the provisions of the Condo Act shall prevail.

126.     Although nominally a "Unit," the Shared Facilities Unit bears every marking of common elements, including the fact that the majority Shared Facilities Unit is made available to Unit Owners for everyday use.

127.  Section 2(d) of the Condo Act defines "Unit" as "a part of the property designed and intended for any type of independent use."

128.     Section 2(e) of the Condo Act defines "Common Elements" as "all portions of the property except the units."

129.     The Shared Facilities Unit includes, among other things, *all* building stairways, corridors, hallways, entrances, elevators, and exits throughout the building *See* Declaration, Section 2.3.

130.    The Shared Facilities Unit is not designed for any "independent" use as required for "Unit[s]" by Section 2(e) of the Condo Act, but rather is for the dependent, common use of every Unit Owner.  No Unit Owners can reach their Unit without going through the areas marked as the SFU and the Association is completely dependent upon the access and shared use of the facilities contained in the SFU.

131.    Despite the SFU being composed of Common Elements and its use necessarily required by all Unit Owners, the Association is granted absolutely no control over the operation or expenses of the SFU.  By the terms of the Declaration, RHO has the sole right to repair, replace or refurbish the SFU, and any determinations relating to the SFU made by RHO shall be "conclusive and binding on the Unit Owners" and the Association as a whole.  *See* Declaration, Section 4.5(c).

132.    RHO likewise has permanent authority to charge the Association/Unit Owners for all costs associated with RHO's "operation, use, maintenance, repair, replacement, and refurbishment of the [SFU]" as well as "reimbursing [RHO] for all general and special condominium assessments, use charges, utility costs, real estate taxes and other fees, costs, charges or expenses incurred by [RHO]."  The authority by RHO to impose these charges is without limitation and without Board involvement at any level.

133.    RHO has complete discretion to collect for the "use" and "operation" of its Unit, which serves for all practical purposes as a Common Element.  The creation by the Developer of the SFU, was designed to keep permanent control over most of the common elements to entities tied closely to the Developer, and to prevent turnover of those elements to the Association, as is required under the Condo Act.

134.    In fact, Section 6.10(d) gives RHO the authority to charge the Association for SFU expenses *without even submitting to the Association a budget*.  Indeed, as of now, the

- 24 -

Association has no means of appealing the costs of the charges currently being made relating to the SFU, which again, are actually Common Elements.

135.     Upon information and belief, many of the charges imposed by RHO are not directly tied to the actual expenses incurred by RHO in connection with the SFU.

136.     By not submitting budgets to the Association and continuing to charge the Association for expenses it has not justified, RHO has intentionally concealed from the Association the actual costs and expenses for operating the hotel and the SFU.

137.     This concealment is especially inappropriate in light of the requirement of Section 6.10(a) of the Declaration that requires the SFU Expense to take into consideration income received by RHO, including funds received under the Rental Agreement.  "The Shared Facilities Budget "shall take into account the estimated net available cash income for the year from the operation or use of the Shared Facilities Unit."

138.     Because RHO has not submitted a budget to the Association, there is no way of determining the extent of the net available cash income received by RHO.

139.     In addition, to the extent RHO has submitted budgets to the Association, such budgets have conflated services related to the SFU and services related to the "actual" common elements of the Association as that term is defined in Article 3 of the Declaration.

140.     The import of the current arrangement is clear: the Developer, through its closely related entity RHO, has made itself the sole arbiter, collector and determiner of the amount for which Unit Owners must reimburse RHO.

141.     The creation of the SFU by the Developer is a direct attempt to circumvent the requirements of Section 18.4(a) of the Condo Act, which requires that the Board of Directors of a condominium shall bear *sole* responsibility "for operation, care, upkeep, maintenance, replacement, and improvement of common elements."  As it stands, the Declaration does not

- 25 -

allow the Association to have *any* responsibility for what are, by all definitions in the Condo Act, "common elements."

142.    In addition, the continuing charge of the Shared Facilities Expense by RHO directly violates Section 9(f) of the Condo Act which sets forth that "*any* assessment" imposed on Unit Owners "shall be in amounts and at times determined by the board of managers" of the Association.

143.    As it stands, all power over the day to day operations of the Common Elements are not vested with the Plaintiff Board, but rather with RHO, a defined "Unit Owner" under the Declaration.

144.    In addition, the method by which Unit Owners have been forced to subsidize RHO's use of the SFU has been done in arbitrarily and in bad faith.  The Unit Owners, at minimum, should be entitled to an accounting relative to the amounts charged by RHO and whether they are expenses that relate to the SFU at all, including a statement of the net income received by RHO under the Rental Agreements, which is required to be taken in consideration pursuant to Section 6.10(a) of the Declaration.

145.    The reason this accounting is necessary is because RHO is simultaneously collecting from the Unit Owners moneys from the rental of the Units, for which RHO serves as the required administrator, as detailed above.  The SFU Expenses (pursuant to Section 6.10(a) of the Declaration) are required to take account of *all* income received by RHO.  Upon information and belief, RHO has intentionally withheld and concealed income received from the operation of the SFU and the Hotel in order to enrich itself with funds to which it is not entitled.

146.    In addition, upon information and belief, Defendants have unjustly enriched themselves to the tune of hundreds of thousands of dollars since 2006 by seeking reimbursement

for hotel operation costs completely unrelated to operation of the "Shared Facilities Unit" as that term is defined in the Declaration.

### The Artifice of the SFU as a "Unit"

147.    The SFU, as set forth above, is a "Unit" in name only.  It functions fully as an aggregation of common elements, and consists largely of facilities common to the entire property, including stairways, corridors, hallways, entrances, elevators, and exits throughout the building.  *See* Declaration, Section 2.3.

148.    The Developer attempts to circumvent the Condo Act labeling the SFU as a Unit, alongside the other Units in the Association's building.

149.    However, the artifice of the arrangement set up by the Developer is revealed in the Declaration, which assigns each Unit of the Association (not including the SFU) a % interest in the Common Elements ranging from 0.30010% to 1.29640%.  *See* exhibit B to the Declaration.

150.    In contrast, the SFU is assigned an interest in the Common Elements of 0.00001%, a virtual nullity that does not require it to contribute in any measurable financial way.

151.    To quantify this discrepancy, for every $1.00 in Common Expenses that the Unit Owner with the *lowest* % interest in the Common Elements must pay (Unit 312 at 0.30010%), RHO is obligated to pay only $00.000003.

152.    Regardless of the infinitesimal percentage ownership attributable to the SFU in the Declaration, the Developer and RHO force the Unit Owners to further subsidize RHO's ownership of the SFU to the extent anything is owed at all.  Defendants permanently exempt RHO from paying assessments or taxes in the Declaration. (*See* Declaration, Section 6.10, requiring Unit Owner reimbursement for "general and special condominium assessments" and "real estate taxes for the Shared Facilities Unit").

153.    The size of the SFU dwarfs the size of any other Unit in the building.  In addition, the SFU dwarfs the value of the other Units in the building.

154.    Unit Owners have been wrongly forced to subsidize RHO's property tax burden. A typical Unit in the Association is assessed at a total assessed value ranging from approximately $9,202 to $39,756.  However, as set forth in the attached property tax information for the SFU, RHO has had the SFU valued at $2.00.  (*See* Exhibit E).

155.    Among other violations detailed below, the assignment to the SFU of 0.00001% of the Common Elements blatantly violates Section 4(e) of the Condo Act, which requires that the percentage of ownership interest in the common elements "shall be computed [by the Developer] by taking as the basis the value of each unit in relation to the value of the property as a whole."

156.    This concept also carries onto taxation.  Section 10 of the Condo Act, which sets forth that all taxes "shall be assessed against and levied upon each unit and the owner's corresponding percentage of ownership in the common elements as a tract, and not upon the property as a whole."

157.    Consequently, the assignment by the Developer of .00001% of the Common Elements of the SFU to RHO has effectively allowed RHO to avoid paying any property tax. Rather, RHO's actual share of the property tax has been wrongly subsidized by the Unit Owners.

158.    As a result of the privileges and immunities granted to RHO by the Developer, Section 18(b)(2) of the Condo Act has been violated, requiring that the Association "shall have one class of membership."  Here, there are two classes of Unit Ownership:  the Unit Owners (with all of their burdens and responsibilities) and RHO (with all of its collection powers and immunities described herein).

159.    The consequence of the scheme established in the Declaration thus is as follows: Despite its status as a "Unit" within the Condominium Property, and owning property that covers a substantial percentage of the square footage contained within the condominium property, and carrying by far the most value of any Unit within the Association, the SFU Owner has no obligation to contribute to the Common Expenses nor the tax liability of the Association.

### RHO's Wrongful Removal of Portions of the SFU from the Association

160.    On September 24, 2014, via a recorded "Special Amendment" to the Declaration, RHO attempted to unilaterally remove certain portions of the SFU from the Association.  *See* Exhibit F.

161.    RHO justifies this "removal" via Section 2.3 of the Declaration which purports to reserve to the Developer or RHO the right to "expand, alter, relocate, withdraw, and/or eliminate portions of the [SFU], without obtaining the consent or approval of the Association."

162.    Section 2.3 of the Declaration, and RHO's attempt to remove portions of the SFU violates Section 27 of the Act, which sets forth specific provisions and procedures relative to removal of any portion of the Association and any amendment of the Declaration.   No amendment can be accomplished without approval of a percentage of Unit Owners as well as the consent of mortgagees having an interest in the condominium property.   By unilaterally removing condominium property and altering the interests of the Unit Owners, RHO's actions violate Section 27 of the Condo Act.

163.    Moreover, RHO's actions violate Section 2.3 of the Declaration in that the removal has substantially impacted the ingress and egress of Unit Owners within the Association and has further impacted the operations of the hotel within the building.

164.    RHO has likewise continued to impose charges on the Association for "Shared Facilities Expenses" that include amounts allegedly removed from the SFU, allowing for an

improper windfall to RHO in violation of the Declaration. RHO continues to insist on payment of all expenses associated with the SFU, despite the removal of a substantial part of the SFU from the Condominium.

*Inability of the Association to Amend the Declaration*

165. Even if the Board wishes to amend the illegal and unconscionable provisions of the Declaration, the Developer has attempted to prohibit it. Section 13.7 states that "no provision of this Declaration affecting the rights, privileges and duties of [Developer] may be modified without [its] written consent."

166. The Declaration purports to strip the Association of all power to control its own governing documents as it relates to Defendants.

167. As set forth above, Section 27 of the Condo Act sets forth the sole procedure by which the Declaration can be amended—"upon the affirmative vote of 2/3 of those voting or upon the majority specified in the condominium documents" and "with the approval of any mortgagees required under the provisions of the condominium instruments."

168. By requiring the approval of the Developer for amendments to the Association that "affect" the Developer, the Declaration is in violation of the Condo Act.

## COUNT III – DECLARATORY JUDGMENT

169. Plaintiff realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 168 of this Complaint.

170. Section 4.1(b) of the Condo Act states that the terms of the Condo Act control over provisions of any condominium's Declaration that are inconsistent.

171. The Declaration contains a number of provisions that are inconsistent with the terms of the Condo Act.

172.     There is an actual and present controversy on this issue regarding the conflict between the provisions of the Declaration and the terms of the Condo Act.

WHEREFORE, Plaintiff respectfully requests this Court enter a declaration, along with all other equitable and proper relief flowing from such declaration that:

a.  The SFU wrongly includes what is required to be "Common Elements" as defined in Section 2(e) of the Condo Act;

b.  The SFU is not a "Unit" as that term is set forth in Section 2(d) of the Condo Act;

c.  The assignment by the Developer of .00001% of the Common Elements to the SFU violates Section 4(e) of the Condo Act which requires that the percentage of interest in the common elements "shall be computed by taking as a basis the value of each unit in relation to the value of the property as a whole;"

d.  The creation of the SFU and the failure by the Developer to turn over portions of the SFU that constitute "Common Elements" violates Section 18.4(a) of the Condo Act, which requires that the Board of Directors of a condominium shall bear *sole* responsibility "for operation, care, upkeep, maintenance, replacement, and improvement of common elements."

e.  The creation and administration of the SFU violates Section 8 of the Condo Act which prohibits the division and/or partition of Common Elements;

f.  The SFU is required to be administered and controlled as Common Elements by the Association;

g.  Section 2.3 of the Declaration granting Defendants the right to remove portion of the SFU at its sole discretion violates Section 27 of the Condo Act, which sets forth specific provisions and procedures relative to removal of any portion of the Association and any amendment of the Declaration;

2588988.9.24866.56501

h.  RHO's Special Amendment of September 24, 2015 removing certain portions of the SFU violates Section 27 of the Condo Act, which sets forth specific provisions and procedures relative to removal of any portion of the Association and any amendment of the Declaration;

i.  RHO's Special Amendment of September 24, 2015 removing certain portions of the SFU violates Section 2.3 of the Declaration in in that the removal has substantially impacted the ingress and egress of Unit Owners within the Association and impacts the operations of the hotel operations within the building.

j.  RHO's Special Amendment of September 24, 2015 removing certain portions of the SFU violates Section 8 of Condo Act, which prohibits the division and/or partition of Common Elements;

k.  Section 13.7 of the Declaration improperly gives the Developer a permanent veto power to block any amendment of the Declaration that affects it contrary to Section 27 of the Condo Act;

l.  The Shared Facilities Expenses described in Section 6.10 of the Declaration and assessed by RHO in its sole discretion violates section 9(f) of the Condo Act requiring that "any assessment" shall be in amounts and at times as determined by the board of managers of the Association;

m.  The immunities, exemptions and powers delegated to RHO (as a presumptive Unit Owner) in the Declaration (including but not limited to the power to assess in Section 6.10 and the exemption for the RHO from paying taxes or assessments) violates Section 18(b)(2) of the Condo Act requiring one class of membership within the Association for all rights, privileges, and obligations relating to the administration of the condominium association;

n.   The immunities, exemptions, and powers delegated to RHO (as a presumptive Unit Owner) in the Declaration (including but not limited to the power to assess in Section 6.10 and the exemption for the RHO from paying taxes or assessments) violates Section 18(q) of the Condo Act which does not permit a "unit owner [to] assign, delegate, transfer, surrender, or avoid the duties, responsibilities, and liabilities of a unit owner under th[e Condo Act]. Pursuant to Section 18(q), avoidance of the obligations under the Condo Act by the SFU "shall be deemed void."

o.   The immunities, exemptions, and powers delegated to RHO (as a presumptive Unit Owner) in the Declaration (including but not limited to the power to assess in Section 6.10 and the exemption for the RHO from paying taxes or assessments) violates Section 18.4(a) of the Act, which requires that the Board of Directors of a condominium shall bear *sole* responsibility "for operation, care, upkeep, maintenance, replacement, and improvement of common elements."

## COUNT IV – BREACH OF DECLARATION

173.   Plaintiff realleges and incorporates by reference paragraphs 1 through 172 as if set forth herein.

174.   RHO is bound by the terms of the Declaration, along with all of the other Unit Owners.

175.   Under Section 6.10(a) of the Declaration, RHO is permitted to charge "Shared Facility Expenses" only to recover "the costs of ownership, operation, use, maintenance, repair, replacement and refurbishment of the Shared Facilities Unit and all improvements and personalty located within or upon the Shared Facilities Unit . . ."

176.   RHO has collect assessments based upon an outdated budget, which included

numerous charges and charge backs upon the Unit Owners which are not proper "Shared Facility Expenses" in contravention of the Declaration.

177.    RHO has failed to take into consideration "net available cash income" from the operation of the SFU in determining the Shared Facilities expenses.

178.    As a result of RHO's violations of the Declaration, the Association has been wrongly charged for Shared Facilities Expenses, and thereby damaged.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendant for damages in an amount in excess of $150,000.00, prejudgment interest, and all other just and proper relief.

## COUNT V – UNJUST ENRICHMENT

179.    Plaintiff realleges and incorporates by reference paragraphs 1 through 178 as if set forth herein.

180.    Count V is pled in the alternative to Count IV.

181.    Pursuant to Section 6.10(a) of the Declaration, RHO is to prepare a Shared Facilities Budget regarding "the costs of ownership, operation, use maintenance, repair, replacement and refurbishment" of the SFU, and is required to take into account all of the income otherwise received from the Association and Unit Owners based on both the Shared Facilities Expenses received from the Association as well as monies received from RHO's share of income received from the Rental Agreements in effect with the Unit Owners.

182.    The Shared Facilities Budget is to be the vehicle by which the Association pays the Shared Facility Expenses charged by RHO.

183.    RHO has ceased sending a Shared Facilities Budget to the Association.  The Association has not been provided with any basis for charges currently imposed by RHO.

184.    To the extent budgets have been provided to the Association, such budgets have failed to take into account net income received by RHO as part of its operation of the SFU in violation of Section 6.10(a), and has included charges that are not related to the SFU.

185.    RHO has continued to simultaneously receive funds from 1) the Association's payment of the Shared Facilities Expense despite the absence of a budget; and 2) RHO's split of rental income received from the rental pool based upon the Rental Agreement in effect with the Unit Owners.

186.    RHO has received and continues to receive amounts from the Association that do not relate directly to the actual expenses incurred by RHO for the "ownership, operation, use, maintenance, repair, replacement and refurbishment" of the SFU.

187.    Upon information and belief, RHO has failed to properly allocate funds received from Unit Owners based on the Rental Agreement towards the SFU, thus increasing the burden by the Association to pay an artificially higher Shared Facilities Expenses to RHO.

188.    Defendants have been unjustly enriched by retaining funds that are not directly necessary for the operation of the SFU to which RHO has no legal claim.

189.    Defendants' improper retention of funds paid by the Association Shared Facilities Expenses to the Association violates fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendant for damages in an amount in excess of $150,000.00, prejudgment interest, and all other just and proper relief.

## COUNT VI – CONVERSION

190.    Plaintiff realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 189 of this Complaint.

191.    Under Section 6.10(a) of the Declaration, RHO is allowed to collect Shared Facilities Expenses to be reimbursed only for "the costs of ownership, operation, use maintenance, repair, replacement and refurbishment of the [SFU] and all improvements and personalty located within or upon the [SFU]."

192.    RHO has collected assessments that do not relate to the permissible avenues for SFU reimbursement detailed in Section 6.10 of the Declaration.

193.    RHO has imposed charges upon the Association beyond the authority permitted to RHO under the Declaration.  Such funds have been received unlawfully.

194.    Plaintiff, in its representative capacity under Section 9.1 of the Act, is entitled to the immediate return of those funds for distribution to the Unit Owners.

195.    RHO has refused to return funds it unlawfully received from the Unit Owners for Shared Facility Expenses which it continues to withhold without right at law.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendant for damages in an amount in excess of $150,000.00, prejudgment interest, and all other just and proper relief.

## COUNT VII - ACCOUNTING

196.    Plaintiff realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 195 of this Complaint.

197.    It is within Defendants' exclusive control to determine the full extent of funds it has received attributable to the operation of the hotel and the SFU.

198.    Defendants have purposefully prevented Plaintiff from ascertaining the funds associated with the operation of the hotel and the SFU.

199.    Due to Defendants' acts of conversion and fraud, an accounting is required to determine the extent of the Defendants' wrongful takings and determine where those funds have been transferred to or how they were expended.

200.    Because of Defendants' reluctance and refusal to provide data related to the SFU and the operation of the hotel, there exists a need for discovery and an accounting.

201.    Defendants' reluctance and refusal to provide information related to the operation of the SFU and the hotel makes Plaintiff's damages virtually impossible to fully measure.

202.    To determine the full scope of Defendants' finances stemming from their operation of the hotel and the SFU, Plaintiff is entitled to an accounting.

WHEREFORE, Plaintiff respectfully prays that this Court enter the following relief;

A)    An order requiring Defendants to provide Plaintiff with an accounting of all hotel operation expenses from 2008 to the present;

B)    Granting such other and further relief as the Court deems just and proper.

RAFFAELLO CONDOMINIUM
ASSOCIATION

By: /s/ David J. Bloomberg
    One of Its Attorneys

David J. Bloomberg
Adam K. Beattie
Chuhak & Tecson, P.C.
30 S. Wacker Drive
Suite 2600
Chicago, IL 60606
Telephone (312) 444-9300
Facsimile (312) 444-9027
dbloomberg@chuhak.com
abeattie@chuhak.com